## Huff, et al. v. Hamilton, et al.

(Decided November 17, 1925.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

Trusts—Words in Will, Appointing Person to Safeguard and Direct Interest of Devisee, Held Not to Constitute Appointment as Trustee.—Where will, after making bequest in trust to mother of deceased, asked that third person safeguard and direct her interest, held that such direction did not constitute appointment as trustee, after considering whole will together with words used.

EDWARDS, OGDEN & PEAK and THOS. HALL for appellants.

WM. S. HAMILTON and PERRY B. MILLER for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Ethel K. Musgrove died testate in Jefferson county March 23, 1923. Her husband, Charles Musgrove, re-

nounced the will. Her mother, Anna M. Huff, was found of unsound mind on May 26, 1924, and Harold L. Huff was appointed as committee for her. W. S. Hamilton was appointed administrator with the will annexed and filed this suit on June 12, 1924, to obtain the direction of the court in the settlement of the estate. Mary L. Collier presented her petition alleging that by the will and codicils she is constituted trustee for Ada N. Huff. The circuit court adjudged her the relief sought. This is the only question presented on the appeal. The will and codicil are in these words:

"I, Ethel K. Musgrove, of Louisville, Jefferson county, Kentucky, being of sound mind and disposing memory, do make this my last will and testament.

"I give, devise and bequeath to my husband, Charles Hamilton Musgrove, all property, real, personal and mixed, of which I may die-possessed, or in which I may have any interest of any kind.

"I hereby appoint said Charles Hamilton Musgrove as executor of this will, and request that he be allowed to qualify without executing bond, and that no inventory of my estate be filed.

"This will is written wholly in my own handwriting this twenty-eighth (28) day of February, 1914.

"(Signed) ETHEL K. MUSGROVE.

"I, Ethel Musgrove (*nee* Huff), of sound mind, do hereby direct that one thousand dollars ($1,000.00) in government bonds be given absolutely to my husband, Charles Hamilton Musgrove, and he is to have full and complete ownership of my interest in the property (house and lot) at 1343 South First street. The interest on bonds, moneys and property of every description (outside the bonds and house and lot, the latter of which is left to my husband during his lifetime) is to be turned over to and possessed by my mother, Mrs. Annie M. Huff. If such interest, money and income is inadequate to her support and comfort, additional sums are to be paid to or used for her living and upkeep out of the money invested or from the sale of one or more government bonds held in trust for her maintenance.

"If diamonds and other personal property and the lot known as lot 6 in block 6—Kenwood—can be

sold to good advantage, the proceeds are to be invested in some good security and the interest used for the upkeep of my mother, Mrs. Annie M. Huff. Upon her death, all bonds and moneys are to become the property of my husband, Charles M. Musgrove, if he is still unmarried, and if he is married or dead, said moneys and bonds are to become the property of my brother, Harold Ledman Huff.

"Upon the death of my mother, Mrs. Annie M. Huff, the house, lot and improvements at 2229 Osage street, now occupied by my brother and family, is to become the property of my brother, Harold, if living. If he is dead, lot and improvements are to become the property of my husband, Charles Hamilton Musgrove, if living and unmarried. If said Charles Hamilton Musgrove is dead or married, and my brother Harold is dead, house, lot and improvements at 2229 Osage street is to become the property of the children of my brother, Harold. Upon the death of my husband, Charles Hamilton Musgrove, my interest, right and title to the property at 1343 South First street is to revert to my brother, Harold Ledman Huff, if living, and if my brother Harold is dead, to his children in equal division when the youngest child reaches maturity, the proceeds of property to be used for their benefit during their minority.

"During the lifetime of my mother I would ask that her interests be safeguarded and directed by my cousin, Mary Collier.

"In witness that this is my last will and desires, I hereby attach my signature this second day of November, nineteen hundred and eighteen.

"(Signed) ETHEL MUSGROVE."

"Louisville, Ky., May 26, 1921.

"In the event of my death the savings account of five hundred dollars and interest in the Louisville National Bank Co. dating from 1916, is to be turned over in its entirety to my mother, Mrs. Anna M. Huff.

"(Signed) ETHEL MUSGROVE."

"Louisville, Ky., June 1, 1921.

"Upon my death all my personal possessions and the amount accruing from the jewelry and diamonds,

I wish sold, is to be divided between my husband, Charles H. Musgrove, and my mother, Mrs. Anna M. Huff. This includes bonds, etc. The rentals from the house and lot at 2229 Osage street are to be paid my mother during her lifetime and at her death, all of which she dies possessed is to go to my brother, Harold Ledman Huff, including house and lot at 2229 Osage street. The house and lot at 1343 S. First street is to belong to my husband, Charles H. Musgrove, during his lifetime. At his death, my interest in same is to go to my brother, Harold Ledman Huff. My mother is to be paid at least $75.00 per month out of the estate I leave.

"(Signed) ETHEL MUSGROVE."

The personal estate, including $12,000.00 in Liberty Bonds, was of value $18,983.00; the realty $2,500.00. Anna M. Huff is living with her son, his wife and four small children. She has lived there since the death of her daughter. He is her committee. She is of unsound mind. The judgment appealed from is in these words:

"The will of Ethel K. Musgrove creates for the benefit of Anna M. Huff a trust of which Mary Collier is named and she shall have the right upon duly qualifying to act, as trustee.

"The trustee for Anna M. Huff shall be entitled to receive from the administrator upon final settlement and distribution one-half of the surplus personalty of the testatrix, to hold upon the trust hereinafter defined.

"The trustee shall use at least seventy-five dollars ($75.00) per month to provide for the support and comfort of Anna M. Huff. The trustee shall have the right to receive the income from the share of Anna M. Huff in the first and third parcels of land hereinabove described."

This vests one-half of the surplus personalty of the testatrix in Mary Collier as trustee for Anna M. Huff. Does the will warrant this?

By the original will everything was devised to the husband. By the first codicil $1,000.00 in government bonds and the full and complete ownership of the testatrix's interest in the First street property, for his lifetime, was devised to the husband, and the interest on bonds, money and property of every description, ex-

cept that left to the husband, was devised to her mother, and, if the income was inadequate to her support and comfort, additional sums were to be used for her proper support out of the money invested or government bonds held in trust for her maintenance. The diamonds and other personal property and the Kenwood lot were to be sold, the proceeds invested and the interest used for the upkeep of her mother. Upon her mother's death all bonds and moneys became the property of the husband, if unmarried or if he was married or dead the property of her brother Harold L. Huff. The next clause of the codicil provides for the remainder in the real estate after the death of her mother and the death or marriage of her husband. Then these words are used: "During the lifetime of my mother I would ask that her interest be safeguarded and directed by my cousin, Mary Collier." The next codicil gave the mother absolutely the savings account of $500.00 in the Louisville National Banking Company. The last codicil, made nearly three years after the second, directs that all her personal property be equally divided between her husband and her mother. It directs the rentals from the Osage street property to be paid to her mother during her lifetime and at her death all that she has is to go to her brother, Harold L. Huff. The First street property is to belong to her husband during his lifetime and at his death to her brother Harold. This codicil concludes with these words, "My mother is to be paid at least $75.00 per month out of the estate I leave." The husband having renounced the will and having received one-half of the personalty, only one-half of the personalty is now on hand. By the last codicil one-half of the personalty is devised to her mother for life and at the mother's death to her brother Harold. The half of the personalty which is now in the hands of the administrator belongs to the mother for life and to Harold at her death, but it is charged with the mother's support and at least $75.00 a month for this purpose is to be paid therefor. The words, "held in trust for her maintenance," in the second codicil must apply not only to the government bonds but to all the personal estate. For the proceeds of the personal property are to be invested in some good security and the interest used for the upkeep of the mother, and at least $75.00 a month is to be paid therefor. It necessarily follows from the will that the whole personal estate (as well as the rents of the realty passing under

the will) is left in trust for the purposes set out in the will, that is, for the support of the mother during her life and at her death to go absolutely to her brother Harold. The trustee will hold for the benefit of the remainderman no less than the life tenant. The trust is created by the will to provide for the life tenant during her life and to secure the remainderman in what is left of the estate at her death. This trust is not imposed on Mary Collier. The testatrix only asks that during the lifetime of her mother her interest may be safeguarded and directed by her cousin, Mary Collier. She only asks that Mary Collier safeguard and direct the interest of the mother. The trustee of the property under the will must be a trustee for both the life tenant and the remainderman. It therefore follows that the circuit court should appoint a trustee under the will to hold the estate as therein directed and it should not have adjudged Mary Collier as trustee entitled to receive from the administrator upon final settlement one-half of the surplus personalty of the testatrix.

It will be observed that by the will and the different codicils Anna M. Huff is mentioned a number of times and in every case the devise is to her; there is no mention of a trustee for her; there is no mention of Mary Collier except in the words quoted, and there is in the will nothing to define her duties and no express words creating her a trustee. Considering the whole will the words used must be regarded as merely a request of the testatrix to her relative to safeguard and direct her mother's interest and not as creating her a trustee or vesting the estate in her as trustee. The committee has charge of the person of his ward and if he fails in duty he may be removed and another committee appointed.

On the return of the case to the circuit court proper orders will be entered appointing and qualifying the trustee as above indicated, the court exercising its discretion in naming the trustee, and on final settlement the whole estate in the hands of the administrator will be distributed to the trustee. The cost of this action, including the cost of the appeal, will be paid out of the estate.

Judgment reversed and cause remanded for a judgment as above indicated.